**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

Case No.  05-32536

ROBERT H. BABB, SR.

Debtor


**MEMORANDUM ON MOTION TO DISMISS OBJECTION
TO DISCHARGE AND SETTLE
COMPLAINT TO DETERMINE DISCHARGEABILITY**


**APPEARANCES:**    MOSTOLLER, STULBERG & WHITFIELD
   Ann Mostoller, Esq.
   136 South Illinois Avenue
   Suite 104
   Oak Ridge, Tennessee  37830
   Attorneys for Debtor

   WADE M. BOSWELL, ESQ.
    Post Office Box 221
    Knoxville, Tennessee  37901
    Attorney for Sandra Ayers

   MICHAEL H. FITZPATRICK, ESQ.
    2121 First Tennessee Plaza
    Knoxville, Tennessee  37929
    Chapter 7 Trustee

   RICHARD F. CLIPPARD, ESQ.
   UNITED STATES TRUSTEE
    Patricia C. Foster, Esq.
    800 Market Street
    Suite 114
    Knoxville, Tennessee  37902
    Attorneys for United States Trustee


**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the court upon the Motion to Dismiss Objection to Discharge and Settle Complaint to Determine Dischargeability (Motion to Dismiss) filed on June 20, 2006, by Sandra Ayers, asking the court to approve a settlement and allow the dismissal of Adversary Proceeding No. 05-3163, styled *Sandra Ayers v. Robert H. Babb, Sr.* (Adversary Proceeding), in which Ms. Ayers objects to the Debtor's discharge under 11 U.S.C.A. § 727(a)(2), (3), and/or (4) (West 2004), or in the alternative, seeks a determination of the nondischargeability of a debt under 11 U.S.C.A. § 523(a)(2)(A) and/or (6) (West 2004).[1] A hearing on the Motion to Dismiss was held on July 13, 2006. Although no creditor appeared, the United States Trustee expressed opposition to dismissal of Ms. Ayers' § 727(a) action and stated his willingness to continue the prosecution of the objection to the Debtor's discharge. Because the terms of the settlement are of concern to the court, ruling was reserved and is now memorialized in this Memorandum.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(A), (I), (J), and (O) (West 1993).

**I**

The Debtor filed the Voluntary Petition commencing his Chapter 7 bankruptcy case on May 5, 2005. Ms. Ayers is a creditor by virtue of a $124,654.00 state court judgment entered in her favor on September 19, 2003, against the Debtor and his son, Bruce A. Babb, Ms. Ayers' former husband (Judgment). In his statements and schedules, the Debtor listed Ms. Ayers' Judgment as an unsecured debt in the amount of $136,231.11.

---

[1] The Debtor commenced his bankruptcy case prior to the October 17, 2005 effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. All statutory citations are, therefore, to the Bankruptcy Code in effect prior to October 17, 2005.

Ms. Ayers filed the Complaint initiating the Adversary Proceeding on October 14, 2005, averring that the Debtor with the intent to hinder and defraud his creditors did not fully disclose property of the estate, that he has concealed and failed to produce records, books, and documents, and that he knowingly and fraudulently made false statements in his bankruptcy statements and schedules. Additionally, Ms. Ayers alleges that the Debtor knowingly, intentionally, and fraudulently accepted a quit claim deed from Mr. Babb transferring her former marital residence to the Debtor in an attempt to deceive her and deprive her of the proceeds. Ms. Ayers also alleges that the Debtor then placed mortgages on properties to which she was entitled to an interest and deeded her former marital residence back to Mr. Babb, thus intentionally, willfully, and maliciously converting her properties for the Debtor's own use. The Debtor filed his Answer on December 20, 2005, denying Ms. Ayers' allegations.

A scheduling conference was held on January 26, 2006, and a Pretrial Order was entered on February 2, 2006, setting a June 19, 2006 trial and stating that "[t]he issues to be determined by the Court are whether, under the provisions of 11 U.S.C. 727(a)(2)(A), 727(a)(2)(B), 727(a)(3), or 727(a)(4), the defendant, Robert H. Babb, Sr. is entitled to a discharge or, in the alternative, whether the indebtedness on obligations due plaintiff, Sandra Ayers, by defendant, Robert H. Babb, Sr., should be held nondischargeable pursuant to 11 U.S.C. 523(a)(2)(A) or 523(a)(6)."

The parties advised the court prior to trial that all matters in controversy had been settled, and Ms. Ayers filed the Motion to Dismiss on June 20, 2006, setting forth the parties' agreement as follows:

3

> [Ms. Ayers] has agreed with debtor that, subject to the Court's approval, she will drop her objections to discharge under 11 U.S.C. 727, but that the indebtedness due her will be held nondischargeable under 11 U.S.C. 523(a)(6). In addition, debtor will pay movant the sum of $10,000.00, being a portion of the out-of-pocket expenses she has incurred in prosecuting this action. [Ms. Ayers] is firmly convinced that the debtor's bankruptcy was filed only in an attempt to avoid paying her judgment.

MOT. at ¶ 9. Despite her allegations in the Motion to Dismiss that the Debtor failed to disclose interests in property and an approximate $50,000.00 debt to the Internal Revenue Service in his statements and schedules, and that no other creditor will benefit from the proposed settlement between herself and the Debtor, Ms. Ayers asks the court to dismiss her objections to the Debtor's discharge under § 727(a), enter a judgment in the Adversary Proceeding finding that the September 19, 2003 state court Judgment is nondischargeable, and approve the Debtor's payment of $10,000.00 to Ms. Ayres in partial reimbursement of her attorneys' fees and expenses incurred in the prosecution of the Adversary Proceeding.

## II

Rule 7041 of the Federal Rules of Bankruptcy Procedure governs dismissal of adversary proceedings and states as follows:

> Rule 41 F.R.Civ.P. applies in adversary proceedings, except that a complaint objecting to the debtor's discharge shall not be dismissed at the plaintiff's instance without notice to the trustee, the United States trustee, and such other persons as the court may direct, and only on order of the court containing terms and conditions which the court deems proper.

FED. R. BANKR. P. 7041.[2]  With respect to the dismissal of § 727 actions, this rule gives courts the discretion to determine, on a case by case basis, whether to approve a voluntary dismissal as tendered

---

[2] Rule 41(a) of the Federal Rules of Civil Procedure generally allows parties to dismiss without prejudice by stipulation or upon order of the court.

4

or whether to impose additional terms and conditions upon the parties. *See Peterson-Marone Const., LLC v. McKissack (In re McKissack)*, 320 B.R. 703, 711 (Bankr. D. Colo. 2005); *Lindauer v. Traxler (In re Traxler)*, 277 B.R. 699, 702 (Bankr. E.D. Tex. 2002). The purposes behind this discretion are policy-related and address "the circumstances of a request for dismissal of a § 727 action [that] create the appearance that the debtor is purchasing his discharge." *McKissack*, 320 B.R. at 718.[3]

> Restricting the issuance of discharges to honest debtors is important to the legitimacy and integrity of the bankruptcy process. Similarly, the legitimacy and integrity of the process requires that the § 727 discharge, a right created by Congress and adjudicated and granted by the federal courts, not be treated as a commodity. Accordingly, the discharge "is not a proper subject for negotiation and the exchange of a *quid pro quo*" between a debtor and creditors. . . . A creditor, therefore, may not initiate a § 727(a) proceeding as a tool in negotiating the nondischargeability of a debtor's debt to it. Furthermore, a debtor may not obtain a discharge by paying a creditor who has filed a § 727(a) complaint in exchange for dismissal of the complaint.

*Bank One v. Kallstrom (In re Kallstrom)*, 298 B.R. 753, 758-59 (B.A.P. 10th Cir. 2003) (quoting *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996) (footnotes omitted)).

In order to address these policy concerns, courts have generally adopted three methods for assessing whether to approve the settlement of a § 727 complaint for consideration:[4] (1) the per se prohibition of such settlements; (2) allowing compromises that serve the public interest; and (3) examining whether the proposed settlement is fair and equitable and in the estate's best interests.

---

[3] Discharge, which relieves "honest but unfortunate" debtors of their debts and allows them a "fresh start" through this discharge, is obviously a primary goal in Chapter 7. *Buckeye Retirement, LLC v. Heil (In re Heil),* 289 B.R. 897, 901 (Bankr. E.D. Tenn. 2003) (quoting *In re Krohn*, 886 F.2d 123, 125 (6th Cir. 1989) (citing *Local Loan Co. v. Hunt*, 54 S. Ct. 695, 699 (1934))).

[4] When monetary consideration is not a factor, the procedure generally followed by this court is to allow the dismissal of an objection to discharge if the dismissal order is approved by the United States Trustee and the case trustee. If the requisite approvals are not obtained by the Plaintiff or if the court deems a hearing to be necessary, the Plaintiff is required to file an appropriate motion to compromise in the case file.

*Traxler*, 277 B.R. 699 at 702-03.  Those courts following the "per se" approach expressly prohibit settlements of § 727 actions.  *See In re Moore*, 50 B.R. 661, 664 (Bankr. E.D. Tenn. 1985) ("Under no circumstances, not even where the intent is innocent, may a debtor purchase a repose from objections to discharge.  A discharge in bankruptcy depends on the debtor's conduct, it is not an object of bargain.").  The "public interest" approach focuses on whether the other creditors were noticed and if dismissal is in all parties' best interests.  *See In re Margolin*, 135 B.R. 671, 673 (Bankr. D. Colo. 1992).  The "fair and equitable/best interests of the estate" approach, which has been adopted by the majority of courts, looks at whether the settlement is in the best interests of the estate and whether the settlement is "tainted."  *See Traxler*, 277 B.R. at 705; *Hass v. Hass (In re Hass)*, 273 B.R. 45, 57 (Bankr. S.D.N.Y. 2002).

The court agrees with those adopting the "fair and equitable" approach, recognizing that Rule 7041 mandates analysis on a case by case basis, and there are instances when it might be appropriate and in the best interests of all creditors to dismiss a § 727 action, even if it is tied with a § 523(c) claim.[5]  However, such cases are subject to a heightened scrutiny.  The court agrees with the following sentiment expressed by the *McKissack* court:

> It should be crystal clear to all concerned that the settlement of a § 727 action which calls for a payment to *go only* to the complaining creditor in return for dismissal of the adversary proceeding are highly disfavored and are unlikely to be approved.  Such settlements create the appearance that a bankruptcy discharge is a commodity that is up for sale; and they fail to account for the interests of the estate and the remaining creditors in the § 727 action.
>
> . . . .

---

[5] To that end, the court declines to follow *In re Moore*, 50 B.R. 661 (Bankr. E.D. Tenn. 1985), which was decided by Judge Bare and contained specifically egregious facts.

> The public policy concerns that are raised by any settlement or dismissal of a § 727 action require close scrutiny by the courts. The Court appreciates the fact that private parties frequently seek to settle or dismiss cases to mitigate risk and to serve their own interests. But, the public policy issues demand that the parties take the larger public interest into account, along with their private interests, when they seek to settle § 727 actions.

*McKissack*, 320 B.R. at 722-23. Acknowledging that "[n]o litmus test exists for approval of settlements involving dismissal of § 727 actions" which "must be in the best interest of the estate and must balance the creditors' and the estate's interests with the public policy concerns implicated by § 727 actions[,]" the court then lists the following factors that it considers when faced with such a motion:

> 1. *Nature of the wrongful behavior alleged in the complaint and the basis and support for those allegations.* The more egregious the behavior alleged and the stronger the case, the greater the appearance that a Debtor is purchasing a discharge and the less likely a dismissal may be approved.
>
> 2. *Whether consideration for the dismissal is paid into the estate or only to the complaining creditor.* Because an action under § 727 affects the interests of all creditors, the Court must examine whether or not a proposed settlement and dismissal of the case is in the best interests of the estate. The creditor who ignores the fact that it has filed an action which affects all of the creditors and parties in interest in the case, and seeks to settle the case on terms that benefit it alone, does so at its peril.
>
> 3. *Whether the amount of consideration going to the complaining creditor is greater than its expenses in prosecuting the action.* Where the primary consideration for dismissal of a § 727 action is paid into the estate for the benefit of all creditors, and such settlement is in the best interest of the estate, the Court would not look with disfavor on the complaining creditor being made whole for its expenses incurred in prosecuting an action which ultimately benefits the estate. But the consideration going to the complaining creditor should be in line with its actual and reasonable expenses.
>
> 4. *Whether other parties have filed objections to the proposed settlement.* The Court must evaluate both the merits of the objection and whether the objector offers the Court an alternative to dismissal.

7

> 5. *Whether another qualified party in interest is willing to commit to taking over the litigation and pursuing it to judgment.* As noted above, when such substitution is allowed for equitable reasons to carry out the purposes of § 727, the substituted party will pick up the case where the parties left it at the time of the settlement.
>
> 6. *The degree to which the settling parties have sought the involvement of the [U.S. Trustee] and case trustee at an early stage of their settlement negotiations.* Rule 7041 specifically requires notice to these parties of proposed dismissals of § 727 actions. These parties are well equipped to address the policy concerns which are expressed in Rule 7041 and the case law.
>
> 7. *Whether or not a § 523 action is being settled at the same time that a § 727 action is proposed to be dismissed.* The presence of a § 523 action alongside a § 727 action requires a determination of the extent to which any consideration paid in connection with the settlement is being paid on account of the § 727 action. In essence, the Court must separate the two settlements before it can assess their respective merits and the other factors enumerated above in connection with the § 727 action.

*McKissack*, 320 B.R. at 723-24 (footnote omitted).

This court agrees that an analysis of the foregoing non-exhaustive list of factors will, in each case, assist in making a determination of whether to approve a proposed dismissal of a § 727 action. With respect to the present Motion to Dismiss, the court finds that these factors clearly weigh against allowing Ms. Ayers to dismiss her § 727 action as she currently seeks to do so. Primarily, the court finds that, in the Motion to Dismiss, Ms. Ayers does not suggest a deficiency of proof necessary to establish her claim that the Debtor engaged in wrongful conduct that, if established at trial, would support a denial of his discharge. In fact, she avers in the Motion to Dismiss that pre-trial discovery in the Adversary Proceeding has provided her with even stronger proof in support of her objection to the Debtor's discharge. Furthermore, the $10,000.00 monetary consideration for the dismissal is not being paid into the Debtor's estate, but to Ms. Ayers alone, and the parties have agreed that Ms. Ayers will receive a judgment in the Adversary Proceeding determining the state court Judgment to

be nondischargeable. The stated purpose of the $10,000.00 payment is to reimburse Ms. Ayers a portion of her attorneys' fees incurred in the prosecution of this adversary proceeding; however, "[i]n Tennessee, courts follow the American Rule, which provides that litigants must pay their own attorney's fees unless there is a statute or contractual provision providing otherwise." *Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005). The fact there is no contractual or statutory basis for the payment of Ms. Ayers' attorneys' fees, gives the court its greatest concern that the § 727 action has been utilized to leverage the settlement of the nondischargeability action.

Ms. Ayers objected to the Debtor's discharge under § 727(a)(2)(A), (2)(B), (3), and (4)(A):

(a) The court shall grant the debtor a discharge, unless—

. . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case [or];

(4) the debtor knowing and fraudulently, in or in connection with the case—

(A) made a false oath or account[.]

9

11 U.S.C.A. § 727(a). Because § 727(a) is liberally construed in favor of the Debtor, Ms. Ayers bears the burden of proof by a preponderance of the evidence. *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000); *Barclays/Am. Bus. Credit, Inc. v. Adams (In re Adams)*, 31 F.3d 389, 393 (6th Cir. 1994); FED. R. BANKR. P. 4005.

Denial of discharge under § 727(a)(2)(A) requires proof of two elements: (1) the disposition of property, including transfer or concealment, within one year of filing his bankruptcy petition, and (2) the Debtor's subjective intent to hinder, delay, or defraud creditors by disposing of his property. *Keeney*, 227 F.3d at 683-84 (citing *Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir. 1997)); *see also Cuervo v. Snell (In re Snell)*, 240 B.R. 728, 730 (Bankr. S.D. Ohio 1999) (stating that a plaintiff need not prove the debtor intended to hinder, delay, and defraud creditors, since proof of any one satisfies § 727(a)(2)(A)).

Whereas § 727(a)(2)(A) encompasses the Debtor's pre-petition acts, his post-petition actions fall within the scope of § 727(a)(2)(B), which requires proof that "the Debtor (1) transferred, removed, destroyed, mutilated, or concealed property of her bankruptcy estate, (2) with actual intent to hinder, delay, or defraud a creditor or an officer of the estate, (3) after the Petition Date." *Harker v. West (In re West)*, 328 B.R. 736, 752 (Bankr. S.D. Ohio 2004).

Ms. Ayers also objected to the Debtor's discharge under § 727(a)(3) for failing to produce documentation "with enough information to ascertain [his] financial condition and track [his] financial dealings with substantial accuracy for a reasonable period past to present." *Wazeter v. Mich.*

*Nat'l Bank (In re Wazeter)*, 209 B.R. 222, 227 (W.D. Mich. 1997) (quoting *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996) (citations omitted)).

Finally, Ms. Ayers objected to the Debtor's discharge pursuant to § 727(a)(4)(A), which requires proof that: (1) the Debtor made a statement under oath; (2) that was false; (3) he knew that the statement was false when he made it; (4) he fraudulently intended to make the statement; and (5) the statement materially related to the bankruptcy case. 11 U.S.C.A. § 727(a)(4)(A); *Keeney*, 227 F.3d at 685; *Hendon v. Oody (In re Oody)*, 249 B.R. 482, 487 (Bankr. E.D. Tenn. 2000). Section 727(a)(4)(A) includes both affirmative false statements and omissions, *Searles v. Riley (In re Searles)*, 317 B.R. 368, 377 (B.A.P. 9th Cir. 2004), and include the Debtor's statements and schedules, executed under oath and penalty of perjury. *Hamo v. Wilson (In re Hamo)*, 233 B.R. 718, 725 (B.A.P. 6th Cir. 1999); FED. R. BANKR. P. 1008; OFFICIAL FORM 1 (Voluntary Petition); OFFICIAL FORM 7 (Statement of Financial Affairs).

In the Motion to Dismiss, Ms. Ayers makes the following statements concerning the Debtor's conduct as alleged in the Complaint:

> In plaintiff's original Complaint in the adversary proceeding, . . . one of the 727 actions was that the debtor did not list his leasehold interest in the service station he was operating at the time he filed his bankruptcy. Subsequently, through discovery, it was ultimately determined that the debtor had more than a leasehold interest and actually had a sale agreement for the property. Finally, it was determined that not only did the debtor have a sale agreement, but that he participated in a sale of the property to a third person in December 2005. The debtor's attorney has made the Chapter 7 Trustee aware of that issue, as well as the fact that the debtor may owe approximately $50,000.00 taxes to the Internal Revenue Service that were not listed in his Schedules but, since they were for pre-petition taxes, would be an obligation of the bankruptcy estate.

MOT. at ¶ 6. These actions by the Debtor, if established at trial, are egregious, representing disclosures that should have been made both prior to and during the pendency of his bankruptcy case, and, if proven to be true at a trial, would justify a denial of his discharge under one or more of the aforementioned subsections of § 727 and weigh heavily against allowing the parties to dismiss the Complaint.

Additionally, the court does not see how allowing Ms. Ayers a judgment of nondischargeability, coupled with a payment of $10,000.00 towards her attorneys' fees, in exchange for her dismissal of the § 727 action against the Debtor is in the best interests of any party in interest other than Ms. Ayers and the Debtor. The Debtor listed unsecured priority debts in the aggregate amount of $165,168.17 in Schedule F, of which, $136,231.11 is Ms. Ayers' Judgment. Of the remaining amounts, Ms. Ayers states that "[t]here were personal obligations of $6,515.00, being approximately 4% of the amount listed, and business debts of $22,422.00 which was a little under 14% of the amount listed. Of the $22,422.00 in business debts, $13,422.00 was listed as disputed[.]" MOT. at ¶ 4. With respect to these debts and the Debtor's general unsecured creditors, Ms. Ayers makes the following statements:

> [Ms. Ayers] acknowledges that neither the personal debts of approximately 4% and the business debts of approximately 14% owed by the debtor will benefit from the proposed settlement, but she affirmatively avers that, with her pre-petition judgment lien and the post-petition determination of back taxes owed by the debtor, there never would have been a distribution to general unsecured creditors even if the Trustee made a determination that there were assets that could be recouped and, in addition, actually recouped funds from the debtor.
>
> [Ms. Ayers] asserts that the remaining unsecured creditors should take some pleasure, although not monetary, in knowing that the debtor will be pursued by both movant and the Internal Revenue Service for balances due, i.e., the debtor is not getting a free

> ride even though he will be getting a discharge except for the significant judgment due movant and any amounts due the Internal Revenue Service.

MOT. at ¶¶ 10-11. The court takes judicial notice of the Chapter 7 Trustee's filing of a report of no assets and abandonment of property on June 28, 2005, evidencing that unsecured creditors are not presently subject to receiving any distribution from the Debtor's estate. Nevertheless, the fact that the Debtor has the funds to pay a significant portion of Ms. Ayers' attorneys' fees raises questions as to whether the estate would be better served by making a distribution thereof to all unsecured creditors rather than to Ms. Ayers, who would then have a nondischargeable Judgment.

For the foregoing reasons, the Motion to Dismiss filed by Ms. Ayers will be denied. The court cannot approve a settlement between Ms. Ayers and the Debtor that will determine Ms. Ayers' Judgment to be nondischargeable, and pay her $10,000.00 towards her attorneys' fees and expenses in exchange for Ms. Ayers dismissing her § 727 action against him. "This *quid pro quo* exchange is exactly what Bankruptcy Rule 7041 discourages, and the [parties] failed to present any evidence showing that [their settlement] was something other than what it appears on its face." *Kallstrom*, 298 B.R. at 760.

An order consistent with this Memorandum will be entered.

FILED: July 26, 2006

> BY THE COURT
>
> /s/ RICHARD STAIR, JR.
>
> RICHARD STAIR, JR.
> UNITED STATES BANKRUPTCY JUDGE